**UNITED STATES of America**

v.

**Lamont ROBINSON.**

**Crim.No. 99–20063–01.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

April 18, 2000.

31. *See Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 89, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991).

John L. Walker, U.S. Attorney's Office, Lafayette, LA, for United States.

J. Kelvin Standstill, Lafayette, LA, for Lament Robinson.

## MEMORANDUM RULING AND ORDER

MEALNCON, District Judge.

Before the Court is the United States' motion to exclude the testimony of defendant Lamont Robinson's expert witness, Dr. Larry Benoit. The charges against Robinson involve allegations that he engaged in sexual acts or caused sexual contact to occur with two females under twelve years of age. Pursuant to a psychological exam of Robinson, Dr. Benoit concluded that Robinson did not have a sexual interest in underage females. Dr. Benoit reached his conclusion using a test known as the Abel Assessment for Sexual Interest ("Able Assessment").

On March 10, 2000, the Court held a hearing regarding the admissibility of Dr. Benoit's testimony. In particular, the hearing addressed whether the Abel Assessment would be admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or alternatively, whether Dr. Benoit's testimony violated

Federal Rule of Evidence 704. To aid the Court in its assessment of the admissibility of Dr. Benoit's testimony, Dr. Gene Able, the individual who developed the Abel Assessment, appeared and testified at the hearing.

### A. Admissibility under Daubert

█ The United States contends that pursuant to the Supreme Court's standard set forth in *Daubert,* Dr. Benoit's testimony would not be admissible at Robinson's trial. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R.Evid. 702. To aid in the determination of whether a particular expert's methodology is reliable in order to satisfy Rule 702, the Supreme Court in *Daubert,* set out four "non-exclusive" factors a district court is to consider:

(1) whether the theory or technique has been tested;

(2) whether the theory or technique has been subjected to peer review and publication;

(3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and

(4) whether the theory or method has been generally accepted by the scientific community.

As the Court appreciates the posture of this case, the qualifications of Dr. Benoit are not at issue. At the March 10 hearing, Dr. Benoit set forth his extensive experience in the area of diagnosis and treatment of individuals with sexually oriented mental problems.[1] What is at issue is the validity and reliability of the Abel Assessment.

---

1. Dr. Benoit testified that he has performed over one hundred evaluations using the Abel

Assessment of Sexual Interest.

### 1. Testing of Theory or Technique

The Court finds that Dr. Benoit's testimony regarding the Able Assessment satisfies the first part of the *Daubert* analysis. Not only did Dr. Abel participate in a research study which tested the Abel Assessment which was published in *Sexual Abuse: A Journal of Research and Treatment*, Vol. 10, No. 2, pp. 81–95, but four independent research studies have been performed on the Abel Assessment. Each study found the Abel Assessment to be valid. Moreover, the results of the studies were presented at the Association for the Treatment of Sexual Abusers national convention on September 20, 1999 and were thus subjected to peer review.

While the United States concedes that the Abel Assessment has been subjected to testing, it contends the Abel Assessment has not been tested for cases involving incest. However, Dr. Abel pointed out in his testimony that the Abel Assessment has undergone testing for cases involving incest and non-incest as opposed to pure incest cases. *Transcript of May 10, 2000 Hearing*, p. 8. According to Dr. Abel, the case at bar would be classified as a incest/non-incest case for which research studies have been performed. *Id.* Although Dr. Abel admits that his definition of incest versus non-incest may be arbitrary when taken in isolation, Dr. Abel explained that specific criteria had to be formulated to measure the results of the studies.

Given that this case fits within a category of cases for which the Abel Assessment has been subjected to testing and research and the propriety of the testing and research has not been questioned, the Court finds that the first *Daubert* factor has been met.

### 2. Peer Review and Publication

The Court finds that this element of the *Daubert* analysis has also been satisfied. In addition to the four independent research studies which were presented at a national convention for the Association for the Treatment of Sexual Abusers, Dr. Abel's own study was published in an article in *Sexual Abuse: A Journal of Research and Treatment*. Dr. Abel testified that his article was subjected to numerous reviews by the journal's editorial committee before being accepted for publication. Of particular importance to the peer review inquiry of the *Daubert* analysis is the fact that the editorial committee was comprised of members of the psychiatric and psychological community.

### 3. Known or Potential Rate of Error

When questioned regarding the Abel Assessment's known or potential rate of error in diagnosing sexual interest in cases of incest/non-incest, Dr. Abel indicated that the Abel Assessment is between 78% and 79% accurate. *Transcript of May 10, 2000 Hearing*, p. 8. Dr. Abel further testified that his study, which was published in *Sexual Abuse: A Journal of Research and Treatment*, generated reliability and validity data. Dr. Abel indicated that reliability measures whether a test will produce consistent results. The Abel Assessment was between 86% and 90% reliable. *Transcript of May 10, 2000 Hearing*, p. 8.

As to validity, Dr. Abel utilized a bivariate analysis which measures the correlation, if any, between a category that a given study group has interest in and the results of the Abel Assessment. *Transcript of May 10, 2000 Hearing*, p. 4. According to Dr. Abel, the bivariate analysis indicated that the Abel Assessment is a valid measure of a person's sexual interest except for males who had been involved sexually with persons 14 to 17 years of age. The alleged victims in the case *sub judice* were not in this age group.

When evaluating the reliability of the expert's methodology, the Fifth Circuit has instructed that "[t]he expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir.1998). There must be some type of objective, independent validation of the expert's methodology. *Id.*

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Id.* "The inquiry authorized by Rule 702 is a flexible one; however, a scientific opinion, to have evidentiary relevance and reliability, must be based on scientifically valid principles." *Id.*

The Court finds that based on Dr. Abel's testimony regarding the statistical scrutiny the Abel Assessment was subjected to, the Abel Assessment appears to be a valid and reliable measure of sexual interest in cases such as this one. The testing procedures Dr. Abel utilized appear to be based on scientifically valid principles which provide an objective, independent validation of the Abel Assessment.[2]

### 4. Acceptance Within the Scientific Community

Although the Abel Assessment in its current form is a relatively recent development, Dr. Abel testified that the theory upon which it is based, visual recognition/reaction, has been accepted by the scientific community as early as the 1940's. The Abel Assessment itself has been used over 18,000 times at over 200 locations across the United States. The Court finds that although the Abel Assessment in its current form may not have reached mainstream acceptance, it has at least gained sufficient acceptance within the psychological community working with sexual offenders.

### B. Admissibility under Fed.R.Evid. 704

As an alternative ground for excluding Dr. Benoit's testimony, the United States contends that his opinion is not admissible under Fed.R.Evid. 704. Rule 704(b) provides that:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The United States argues that admission of Dr. Benoit's testimony would violate Rule 704(b) because the only reason his testimony is being admitted is to prove that Robinson's mental state was such that Robinson would not have committed the crime charged. Accordingly, the United States contends that Robinson is attempting to prove he did not have the requisite mental state to commit the crime, an ultimate issue which Rule 704(b) prohibits an expert from testifying to.

Robinson maintains that Dr. Benoit's testimony is not violative of Rule 704(b). Robinson asserts that the ultimate issue the trier of fact must decide is whether he knowingly engaged in the sexual contact alleged, not whether he has a sexual interest in children. Because Dr. Benoit's testimony will only embrace the latter, Robinson argues Rule 704(b) is not violated.

For an expert opinion to violate Rule 704(b), the opinion must address an ultimate issue the trier of fact is to decide. Thus, the first step in analyzing Dr. Benoit's testimony is to determine what are the constituent elements of the charges against Robinson. *See U.S. v. Dixon,* 185 F.3d 393, 398 (5th Cir.1999). In *Dixon,* the Fifth Circuit analyzed Rule 704(b) in the context of an insanity defense. The government's expert was alleged to have violated Rule 704(b) by offering an opinion that the defendant did appreciate the wrongfulness of his actions. Finding that the government's expert did violate Rule 704(b) because the defendant's ability to appreciate the wrongfulness of his actions

---

**2.** The Court also finds the United States' argument regarding the inability of the Able Assessment to make a diagnosis of mental illness unavailing. Although Dr. Benoit verified that the Abel Assessment is not a diagnos-

tic tool to be used in isolation, he affirmed that the Abel Assessment was an accurate indicator of sexual preference, regardless of whether such sexual preference does or does not lead to a diagnosis of mental illness.

is an ultimate issue of a defendant's insanity defense, the court recognized that Rule 704(b) does not preclude an expert from giving a diagnosis of mental illness. Rather, Rule 704(b) only precludes an expert from giving an opinion as to the effect the defendant's mental illness has on his ability to appreciate wrongdoing. "An expert is therefore free to testify as to whether the defendant was suffering from a severe mental illness at the time of the criminal conduct; he is prohibited, however, from testifying that his severe mental illness does or does not prevent the defendant from appreciating the wrongfulness of his actions." *Id.* at 400.

The Fifth Circuit has also stated that it does not construe Rule 704(b) strictly. *United States v. Triplett,* 922 F.2d 1174, 1182 (5th Cir.1991). Rule 704(b) "prohibits only direct statements on the issue of intent." *Id.* In *Triplett,* the defendant alleged that he committed arson as a result of an emotional state of rage induced by drugs he had taken. The Fifth Circuit upheld the lower court's decision to allow the defendant's expert to testify generally about the effect of drugs on persons but did not allow the expert to testify about the defendant's specific reaction to drugs. *Id.*

Applying these principles, the ultimate issue the United States must prove to convict Robinson is whether he knowingly engaged in sexual acts or caused sexual contact with a person under 12 years of age. The requisite mental element is knowingly engaging in the conduct alleged. Whether Robinson was or was not a sexual deviant or had a sexual preference for minors is not a necessary element of the offense. Since Dr. Benoit will only testify that Robinson did not have a sexual interest in young females, such testimony does not address the ultimate issue to be decided by the trier fact. If Dr. Benoit testified that Robinson personally could not have committed the crimes charged because he was not a sexual deviant, then his testimony would likely violate Rule 704(b).

Accordingly, Dr. Benoit's opinion will be limited to whether Robinson had a sexual preference for underage females. Dr. Benoit will not be allowed to offer an opinion as to whether Robinson could have committed the crimes at issue.

Accordingly,

IT IS ORDERED that the United States' motion to exclude the expert testimony of Dr. Larry Benoit is DENIED. Dr. Benoit will be permitted to testify at the trial of this matter consistent with the parameters set forth in the foregoing opinion.