**UNITED STATES of America, Plaintiff,**

v.

**Jeremy Shane BIRDSBILL, Defendant.**

**No. CR 02–72–GF–CCL.**

United States District Court, D. Montana, Great Falls Division.

Jan. 24, 2003.

## ORDER

LOVELL, Senior District Judge.

On the morning of January 15, 2003, the third day of trial in the above-captioned criminal matter, the Court granted the government's Motion *In Limine* to Exclude Expert Testimony. The Motion was opposed by the Defendant, who had desired to present the testimony of Dr. Michael Scolatti to the jury.

Due to the press of trial, the Court was unable to issue a written decision detailing its reasons for granting the government's motion. As promised by the Court, this Order details the factors considered by the Court before granting the Motion to Exclude Expert Testimony.

1. *Timeliness.*

The Indictment was filed on June 24, 2002. The case was tried during the week of January 13, 2003. Defense counsel therefore had approximately six months to obtain the testimony of an expert witness.

This case was tried once before, during the week of December 2, 2002. Prior to that trial, defense counsel filed a Notice of Expert Witness (Dr. Michael Scolatti) on October 15, 2002. On November 18, 2002, defense counsel filed an Expert Witness Disclosure, which states that Defendant intends to present the testimony of Dr. Michael Scolatti at trial and attaches Dr. Scolatti's curriculum vitae. This Witness Disclosure also states that Dr. Scolatti's opinions will be disclosed when received by defense counsel. On November 22, 2002, defense counsel filed a Notice of Intent Not to Call Expert Witness Dr. Scolatti.

Following the December 6 mistrial, the Court held a telephone status conference with counsel for both parties on December 9, 2002. By unanimous agreement and stipulation of counsel, it was determined that the case would be retried on January 13, 2003. That same day, December 9, Defense counsel telephoned Dr. Scolatti and asked him to serve as an expert witness in the second trial.[1] Defense counsel did not mention this fact during the status conference, either to the prosecutor or the Court.

On December 20, 2002, the Court, after being telephoned by counsel seeking to have a psychological examination of the Defendant conducted in the detention facility, and desiring to know whether any competency issue existed that would delay the case, ordered defense counsel to file a motion for psychological examination of the Defendant. Defense counsel waited 10 days before filing that motion on December 30. After considering defense counsel's explanation that she was on vacation during most of this ten-day period of delay, the Court finds this delay to be without justification.

On January 3, 2003, the Court granted conditionally the Defendant's Motion for Psychological Examination. The Court reminded counsel of her stipulation to the January 13 trial date and pointed out that defense counsel was not leaving the government sufficient time to obtain its own expert. Most important, the Court made a finding that this was a case of special

public importance within the meaning of the Victims' Rights and Restitution Act of 1990, as amended, *see* 18 U.S.C. § 3509(j), and that another continuance would cause extreme stress and suffering to the three child witnesses, all of whom had already testified in the first trial.

The Court permitted the psychological examination on the condition that it not delay the January 13 trial date. The Court ordered defense counsel to file a witness disclosure by 5:00 p.m. on January 8, 2003. This gave the government only two working days before trial to consider any potential issues arising from the testimony of a defense expert at trial.

### 2. *Sufficiency of the Notice.*

■ Defendant filed a witness disclosure statement on January 8, 2003, just two working days before trial, that reads, in pertinent part, as follows:

> Dr. Scolatti will testify, if allowed, that he administered the A.B.L.E. psychosocial test on Tuesday, January 7 to Mr. Birdsbill and that Mr. Birdsbill displayed normal sexual interest patterns and showed no abnormal sexual interest in young boys. Dr. Scolatti will have a full report by Monday, January 13, 2003. That full report will be provided to the Court[2] and AUSA David Dennis as soon as it is received.

Def.'s Notice Regarding Expert Testimony and Witness Disclosure, Docket # 105. The Court does not believe that this witness disclosure meets the requirements of

---

1. See Affidavit of Melissa Harrison, ¶ 8, filed January 8, 2003.

2. On the second morning of trial, defense counsel gave the law clerk a copy of Dr. Scolatti's final report and also submitted the original and two copies of the final report to the Clerk of Court for filing under seal. The Court can think of no reason why the Defendant would be entitled to file his expert's report when the expert did not testify. The

Court will return Dr. Scolatti's final report, marked "filed in error" to defense counsel. In any event, on January 14, 2003, the day that the report was received, the Court was in trial the entire day and was therefore unable to read Dr. Scolatti's twenty-five page final report before ruling the next morning on the government's motion to exclude the expert testimony. The report was not studied by the Court and was filed in error.

Rule 16, which provides that "[t]he summary must describe the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications." Rule 16(b)(1)(C), Fed.R.Crim.P. (Dec.2002). This disclosure does not actually state what Dr. Scolatti's opinion is but, rather, merely provides a test result. In fact, defense counsel never disclosed what Dr. Scolatti's opinion would be until late in the day on the second day of trial, January 14, 2003, when counsel argued the government's Motion to Exclude Expert Testimony; at that time defense counsel disclosed that Dr. Scolatti would testify that Defendant showed no sexual interest in boys of any kind, *which is inconsistent with prolonged sexual abuse of one child,* which is of course the allegation in this case.

The Court seriously doubted that Defendant's January 8, 2003, witness disclosure was sufficient because it did not provide the opinion of the expert, only a test result. If the witness disclosure was sufficient in any respect, however, it was only sufficient with respect to the expert's testimony as to the "A.B.L.E." test, which the Court now understands to be the Abel Assessment for Sexual Interest™ ("AASI"). The Court would not have allowed Dr. Scolatti to testify to any opinion unrelated to the AASI for lack of notice to the government. Rule 16(d)(2)(C), Fed. R.Crim.P.

Out of an abundance of caution, the Court considered whether Dr. Scolatti should be allowed to testify as to his opinion based upon Defendant's AASI test results. The Court has considered both the relevance and the reliability of the test, and makes the following findings.

■ 3. *Relevance of the Abel Assessment for Sexual Interest™ ("AASI").* According to Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." There are several reasons that the AASI test results at issue are not relevant in this case. First, the AASI is a psychological instrument[3] to be used for treatment, not diagnostic purposes, and it is not designed to detect whether a person has sexually abused children. "There has never been a claim that The Abel Assessment could be used to screen pedophiles from normals." *Ready v. Massachusetts,* 2002 WL 1255800 (Mass.Super.Ct. May 17, 2002) (*quoting* Dr. Gene G. Abel's Letter to the Editor, *Sexual Abuse: A Journal of Research and Treatment* ). Instead, the more typical and appropriate use of the instrument is to measure whether an admitted pedophile has made psychological improvements as the result of a program of treatment.

Second, the AASI tests sexual interest with slides of Caucasian and African–American children. This is a case involving allegations of sexual abuse of a Native American child by a Native American adult. All three victims testifying in this case were Native American children. Ad-

---

**3.** The Abel Assessment for Sexual Interest™ is a test that studies visual reaction time ("VRT"). A test subject is asked to view slides of clothed persons of varying age and sex for the purpose of rating sexual attractiveness on a paper-and-pencil questionnaire. The subject is supposed to think that the paper-and-pencil test is the actual test, but the critical portion of the test calculates how long the subject gazes at the slide. It is this measure of VRT that is used to determine the subject's sexual interest in the various categories of adults and children shown in the slides. Both the questionnaire results and the VRT results are emailed or faxed by the test administrator to Dr. Abel's for-profit company, Abel Screening, Inc., in Atlanta, Georgia. After analyzing the data according to his proprietary formula, Dr. Abel then faxes back to the test administrator a summary (bar graphs, etc.) of the test results.

ditional alleged victims presented to the Court by the government are also Native American children. Defendant's AASI test results may report accurately the Defendant's sexual interest in Caucasian and African–American children, but those results are not relevant to the ultimate fact to be decided by the jury—whether a particular Native American adult sexually abused a particular Native American child.[4]

Third, the value tested by the AASI is sexual interest. Dr. Abel himself, in a 2001 published article, stated that he excluded incest-only cases from his study of the AASI because offenders in incest cases often are motivated by reasons other than sexual interest. Abel, Jordan, Hand, Holland, and Phipps, "Classification Models of Child Molesters Utilizing the Abel Assessment for Sexual Interest," *Child Abuse and Neglect: The International Journal*, 25(5), 705 (2001).

In this case, the Defendant was the step-father of the child victim (and the biological father of the victim's half-sister). Testimony from the child and other family members alleged that the abuse occurred within the family residence while the Defendant was babysitting his step-sons and infant daughter. The government's notice of Rule 413 and Rule 414 evidence also alleged that the Defendant had previously abused two children who were his first-cousins. Testimony at trial showed that the Defendant had been convicted of raping his 14–year–old niece (i.e., the niece of the mother of Defendant's child), who also lived in the family residence at the time of the rape. Another child victim who testified at trial was the younger brother of Defendant's girlfriend, and it was alleged that the Defendant was living with both the girlfriend and her younger brother at the time of that alleged sexual abuse. Thus, the allegations in this case of Defendant's sexual abuse of children are permeated with incestuous aspects. The Court doubts that a test that merely evaluates Defendant's sexual interest in children *per se* reaches the core of Defendant's psychological motivation to sexually abuse children within his immediate and extended family. Therefore, a psychological instrument that calculates Defendant's sexual interest in an irrelevant group of children (Caucasian and African–American children), that ignores completely issues of family dynamics and the Defendant's own psychosocial history, is not relevant to the ultimate fact to be decided by the jury.

Pursuant to Rule 702, Fed.R.Evid., the Court concluded that expert testimony regarding Defendant's AASI test result is not relevant evidence, and therefore is not admissible, because the AASI will not assist the trier of fact either in understanding the evidence or in determining a fact in issue.

■■■ 3. *Reliability of the Abel Assessment for Sexual Interest* ™ *("AASI")*. Scientific testimony must not only be relevant; it also must be reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[5] Serving as "gatekeeper" of

4. Although the government did not have time to obtain an expert witness, much less a cultural expert such as testified in *United States v. White Horse,* 177 F.Supp.2d 973, 975 (D.S.D.2001), I note that the district court in that case considered the relevance of a Native American culture that "teaches it is impolite for a person to make prolonged eye contact with another person" to a test that examines visual gazing or viewing time. Thus there may be cultural issues that may interfere with this Defendant's ability to take an accurate AASI test.

5. *See also, General Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

scientific expert evidence, a trial court should consider (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Id.* at 592–94, 113 S.Ct. 2786. Defense counsel informed the Court at oral argument on the government's Motion *In Limine* to Exclude Expert Testimony that she did not know the specific *Daubert* factors vis-a-vis the reliability of the AASI, but that her expert could testify about the reliability of the test. Because the expert was not present to make a proffer on the issue of reliability, and because the trial phase was at or near the end of the Defendant's case-in-chief, the Court made its ruling based upon the following considerations of scientific validity and reliability:

a. Whether a theory or technique can be tested. The Court rejects the conclusions of the district court in *United States v. Robinson*, 94 F.Supp.2d 751, 752 (W.D.La.2000), that the AASI has been properly verified by independent testing of the theory underlying the test. The district court in *Robinson* noted that Dr. Abel conducted a research study, the results of which were published in 1998,[6] and four independent research studies verifying the theory have also been performed.

The Court finds that the discussion of the *Daubert* factors in *Ready v. Massachusetts*, 2002 WL 1255800 (Mass.Super.Ct. May 17, 2002), is more thorough

than that in *Robinson*. The district court in *Ready* examined Dr. Abel's 1998 study and discounted its value because Dr. Abel admitted in his testimony that the 1998 study used no control group (for comparison to responses from normal individuals), that no attempt was made to study faking, and that the penile plethysmograph test ("PPG")[7] is itself subject to faking. The *Ready* court also noted that there "is no evidence that any such study [of faking of the AASI] has yet been published." *Ready*, at *6. Dr. Abel's 1998 study therefore does not provide the necessary verification of validity of the AASI test.

Most important, there is a fundamental problem in any attempt to replicate or verify the validity of the AASI because the formula used by Dr. Abel is proprietary information. Dr. Abel testified that he does not share his formula with anyone outside his company. *Ready*, at *14. This alone has prevented true verification and replication of AASI test results. The *Ready* court concludes that "Dr. Abel's . . . failure to reveal . . . [the formula underlying the AASI test] means that the formula has not been subjected to rigorous scientific scrutiny." *Id.* Another court has come to the same conclusion and compared Dr. Abel's formula to the "magic of young Harry Potter's mixing potions at the *Hogwarts School of Witchcraft and Wizardry*." *In the Interest of CDK, JLK, and BJK*, 64 S.W.3d 679, 683–84 (Tex. Ct. Appeals Jan. 3, 2002). This Court is not equipped to interpret or test Dr. Abel's formula, and because Dr. Abel has not released his for-

---

**6.** Abel, Huffman, Warberg, and Holland, "Visual Reaction Time and Plethysmography as Measures of Sexual Interest in Child Molesters," *Sexual Abuse: A Journal of Research and Treatment*, Vol. 10, No. 2, pp. 81–95 (1998) (showing that both visual reaction time and plethysmography are highly reliable and valid means of assessing sexual interest in children.) The subjects of this study were 157 males, all of whom had admitted to inappro-

priate sexual behavior. The last sentence of this journal article notes that "[t]he ability of clients to falsify their visual reaction time responses is currently being evaluated." *Id.* at 94.

**7.** A Ninth Circuit panel has found the plethysmograph test to be scientifically unreliable and inadmissible under *Daubert*. *Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir.2000).

mula for testing by other scientists, it remains merely an untested and unproven theory.

b. · Whether it has been subjected to peer review and publication. The trial court in *Ready* examined four studies[8] of the AASI and found that each of these studies failed to support the validity of the AASI test.

Two published articles by Lane Fischer and Gillian Smith actually question the validity of the AASI based upon the unknown formula used by Dr. Abel, arbitrary data cutoffs ("the rule of thirds"), and removal of disparate data prior to analysis of the data.

A study by Scott Johnson and Alan Listiak examined 26 inmates in a prison sex offender treatment program, comparing their responses to VRT and PPG. "This study was limited because" (1) the VRT and PPG results are calculated differently; (2) they used different stimuli for the VRT and PPG; (3) there was a potential response bias because the participants were attempting to portray themselves in the best light possible; (4) all participants admitted their conviction crime; and (5) due to various circumstances, they could not administer the PPG to all participants in the same manner." *Ready*, 2002 WL 1255800 at *8. This study does not provide independent verification of the validity of VRT (which is used in the AASI) as opposed to PPG.

Theoharis Seghoprn and Markus Wiegel presented their paper, "Use of Plethysmography and Visual Reaction Time (Abel Screening Assessment) in a Private Clinical Practice" to the 1999 conference of the Association for the Treatment of Sexual Abusers ("ATSA"), which was founded by Dr. Abel and Dr. Judith Becker. Because it is an unpublished study, its results have not been subjected to peer review process for publication in a scientific journal. The method of testing used by Seghorn and Wiegel is unclear, and the test results are equally unclear. "Apparently, Seghorn and Wiegel were developing a theory that PPG and VRT in combination are better at classifying sex offenders than either taken alone." *Ready*, at *9. This study does not serve to support the validity of the AASI.

Stephen Gray also presented his unpublished paper, "Outcomes of the Abel Assessment and the Penile Plethysmograph in a Sample of Sex Offenders in Outpatient Treatment," to the same 1999 ATSA conference. Gray's study, which has not been subjected to peer review, suggests that the AASI has a disturbing inability to identify the pedophiles among subjects categorized as dissimulators. The AASI was able to identify only 36% of the pedophiles among a group identified as dissimulators. *Ready*, at *9.

---

**8.** Fischer and Smith, "Statistical Adequacy of the Abel Assessment for Interests in Paraphilias," and "Assessment of Juvenile Sexual Offenders: Reliability and Validity of the Abel Assessment for Interest in Paraphilias."

Johnson and Listiak, "The Measurement of Sexual Preference—A Preliminary Comparison of Phallometry and the Abel Assessment," The Sex Offender.

Seghorn and Wiegel, "Use of Plethysmography and Visual Reaction Time (Abel Screening Assessment) in a Private Clinical Practice" (unpublished) (presented at ATSA conference 1999).

Gray, "Outcomes of the Abel Assessment and the Penile Plethysmograph in a Sample of Sex Offenders in Outpatient Treatment" (unpublished) (presented at· ATSA conference 1999).

Letourneau, "A Comparison of Objective Measures of Sexual Arousal and Interest: Visual Reaction Time and Penile Plethysmograpyhy," *Sexual Abuse: A Journal of Research and Treatment* (scheduled for future publication).

Finally, the *Ready* court examines the soon-to-be published study of Elizabeth Letourneau, "A Comparison of Objective Measures of Sexual Arousal and Interest: Visual Reaction Time and Penile Plethysmography," upon which Dr. Abel himself commented upon the author's early drafts. Letourneau concludes that her study cannot replicate the results of Dr. Abel's 1998 study because of differing methodologies used to conduct the two studies. Letourneau also acknowledges that her study was limited because it did not use a control group of normal individuals and might have distorted results because participants in the study may have tried to manipulate their test results.

None of these studies has independently verified the validity of the AASI. Notably, the papers presented to the ATSA national conferences cannot be considered independent for the reason that Dr. Abel is a founder of the ATSA and sits on its publications board. *See Ready*, at *11. These unpublished studies cannot, and do not purport to, provide the requisite testing and verification of Dr. Abel's theories.

The Defendant also submitted to the Court during oral argument an article not mentioned above, entitled "Report from the Committee on Sex Offenders: The Abel Assessment for Sexual Interest—A Brief Description." This article was authorized by Richard B. Kreuger, John M.W. Bradford, and Graham D. Glancy and published in the Journal of the American Academy of Psychiatry Law in 1998. This brief article concludes that

[w]hile the Abel Assessment offers promise as a method for measuring sexual interest in a technically simple and unobtrusive way, several problems remain. First, there are as yet no published results describing its sensitivity and specificity. *For a new procedure, corroboration of the procedure and its reliability, sensitivity, and specificity from a variety of sources that can offer an independent assessment free from any potential economic self-interest, and communication of these results through the peer-reviewed literature are critical tests of a procedure's validity.* Dr. Abel has reported, however, that an article including data that support his instrument has been accepted for publication [Dr. Abel's own 1998 publication]. Second, the concept of sexual interest falls more in the cognitive domain and is not the same thing as sexual arousal; thus, the Abel Assessment may be measuring something different than plethesmography does or some of the other techniques mentioned above. Third, it is not clear whether the Abel Assessment is sensitive to treatment effects and able to change over time.... Fourth, even the questionnaire portion needs to be validated, in the way, for instance, that the Clarke Sexual History Questionnaire has been.

Overall, the Abel Assessment has promise and deserves to be tried in the field.

Krueger, Bradford, and Glancy, "The Abel Assessment for Sexual Interest–A Brief Description," J. Am. Acad. Psychiatry Law, Vol. 26, No. 2, 279 (1998) (emphasis supplied). This article does not provide either the independent verification of theory or the peer review required by *Daubert*.

Essentially, there have been no independent studies conducted for the purpose of verifying the theory underlying the AASI. The AASI test cannot satisfy the *Daubert* factor of peer review and publication.

c. The known or potential error rate of the theory or technique. The known or potential error rate of the AASI varies from poor (Gray's calculation of general 21–22% error rate and Dr. Abel's calculation of 32% error rate) to appalling (64% error rate in Dr. Gray's analysis of a group

of dissimulators). *Ready,* at \*16–17. Not only is the theory underlying the test unproven, its error rate makes it a highly unreliable instrument, particularly in the hands of a moderately intelligent subject bent upon manipulating the test results. Because of the significant error rate and the fact that there is no way to know whether a subject is falsifying his test results, the AASI is basically useless when used by itself (i.e., without a PPG test and a polygraph test) as a measurement of pedophilia in the criminal justice context.

d. Whether the theory or technique enjoys general acceptance within the relevant scientific community.

"[A] known technique which has been able to attract only minimal support within the community may properly be viewed with skepticism." *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786. It is clear that the relevant scientific community (scientists and clinical professionals dealing with sex offenders) does not generally accept the AASI test as a diagnostic test for pedophilia, although it may have other commonly accepted uses in treatment and corrections. Prior to January 31, 2002, the Practice Standards and Guidelines for Members of the ATSA stated that "[p]hallometric testing is currently the best available measure of deviant sexual interests among male sexual abusers. For these reasons, phallometric testing is usually preferred over viewing time measures in the assessment of deviant sexual interests." *Ready,* at \*12. Apparently, an amendment to this Standard was made in late January, 2002, for the purpose of influencing the *Daubert* hearing conducted in the *Ready* case. *See Ready,* at \*12–13. From the evidence available to it, the trial court in *Ready* inferred that the amendment to the Practice Standards and Guidelines of the ATSA was motivated by pecuniary gain of some ATSA members who profit from the AASI test. The *Daubert*

factor relating to general acceptance in the scientific community, like the preceding three *Daubert* factors, points away from reliability and general acceptance of the AASI test in the scientific community for the purpose presented by Defendant in this case.

On the facts considered above, the Court finds that the AASI test is not reliable for the purpose of characterizing the Defendant as being sexually interested or uninterested in boys under the age of 12 years. Even if the test were reliable for that purpose, it would nevertheless be inadmissible because the test is not relevant to the facts of this case. Defendant's expert testimony as to the AASI test is excluded on grounds of reliability and relevance. All other expert testimony offered by Defendant is excluded pursuant to Rule 16(d)(2)(C), Fed.R.Crim.P., for lack of timely disclosure and adequate notice to the government.

For the reasons outlined above, the Court granted the government's Motion *In Limine* to Exclude Expert Testimony on January 15, 2003.

Accordingly, and for the reasons stated *supra* note 2,

IT IS HEREBY ORDERED that the Clerk shall mark Dr. Scolatti's January 11, 2003, Forensic Report as having been "Filed in Error." The Clerk shall then mail the original and any copies of the report to defense counsel.

The Clerk is directed forthwith to notify counsel of entry of this order.