OPINION OF THE COURT
Joseph C. Calabrese, J.
Defendant, Kent Franks, is charged with nine separate counts of course of sexual conduct against a child in the second degree as the result of his allegedly engaging in two or more *699 acts of sexual conduct with nine different complainants, each less than 11 years old, over a period of not less than three months’ duration, to wit, that either he placed his hand in contact with the child’s genital area or that he caused the child’s hand to come in contact with his genital area or that he caused his genital area to come in contact with complainant’s body. These acts are alleged to have occurred while he engaged in his employ as an elementary school gym teacher during the gym class in which complainants were enrolled.
A person is guilty of course of sexual conduct against a child in the second degree when, over a period of time not less than three months in duration, he or she engages in two or more acts of sexual conduct with a child less than 11 years old. (Penal Law § 130.80 [1] [a].)
Sexual conduct means sexual contact, i.e., any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing. (Penal Law § 130.00 [3].)
Thus, for a defendant to be found guilty of each of the charged crimes, the People must prove beyond a reasonable doubt at trial:
1. that defendant engaged in two or more acts of intentional sexual contact with the complainant for the purpose of sexual gratification, and
2. that the complainant was a child less than 11 years old, and
3. that these sexual contacts occurred over a period of time not less than three months in duration.
Defendant moves, in limine, for an order permitting him to introduce expert testimony at trial by Gene G. Abel, M.D., that in his assessment defendant does not exhibit the characteristics seen in individuals who have been involved in the inappropriate touching of children. Dr. Abel reaches this conclusion by using a test he developed which is known as the Abel assessment for sexual interest (AASI). In the alternative, defendant moves for a Frye hearing (Frye v United States, 293 F 1013 [1923]) to determine the admissibility of this “scientific evidence.”
The AASI is a two-part computerized test claimed to identify deviant sexual interests in individuals, including sexual preferences for young children. The first part of the test consists of *700 an extensive pedigree and psychological interview of the individual being tested, including questioning of the testee while he is monitored by a polygrapher. The second part of the test ostensibly determines the testee’s sexual interest while viewing 160 digital images of clothed persons of all age groups. The test data is then processed into a statistical model and compared to a base statistical model. This base model was prepared by Dr. Abel from studies involving known deviant sexual offenders.
Essentially, the testimony which defendant seeks to introduce through Dr. Abel is found in the conclusions of his AASI report on defendant (annexed as exhibit A to the motion) to wit:
“The purpose of this assessment was to determine if Mr. Franks had characteristics frequently seen in individuals who have been involved in inappropriate touching of children. We cannot determine if he did or did not touch children inappropriately, since that would rest on the [trier] of fact at the time of trial. However, he fails to show characteristics of those who have molested children based on the probability measures described above, and the results of the polygraph questions, the two most valid measures we have examining this issue. Furthermore, the clinical history that Mr. Franks has alleged to develop a pattern, so that he could be touched by children during a physical education class that is in open view of others, is not commonly seen in cases of child molestation. Child molesters typically do not molest children in the context of a public setting but quite the contrary, attempt to isolate children one to one, develop a close and trusting relationship with the child over time, and then while isolated with the child without others around, begin inappropriate touching. It is not impossible that Mr. Franks molested children within the context of public viewing of physical education instruction, but it is exceedingly uncommon and unlikely.” (Emphasis added.)
While defendant has cited the use of the AASI in other jurisdictions as indicative of the acceptance of this test in the scientific community, examination of those references indicates that the relevant scientific community in which this test has been accepted is in the sentencing, supervision and treatment of sex offenders, all posttrial situations.
*701 Defendant also argues that pursuant to United States v Robinson (94 F Supp 2d 751 [2000]), the proffered testimony should be admitted because this soft scientific evidence, to wit, the AASI (just like hard scientific evidence such as DNA) has been found to be generally accepted in the scientific community pursuant to the factors set forth in Daubert v Merrell Dow Pharms., Inc. (509 US 579 [1993]). Defendant argues that Daubert sets forth a stricter standard than Frye (supra), and that the AASI test should be held admissible by this court pursuant to the holding in Robinson. Defendant requests a Frye hearing in the alternative.
In New York, the rule for admissibility of soft scientific evidence is succinctly set forth in People v Lee (96 NY2d 157, 162 [2001]):
“As a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court. Tt is for the trial court in the first instance to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefitted by the specialized knowledge of an expert witness’. Essentially, the trial court assesses whether the proffered expert testimony ‘would aid a lay jury in reaching a verdict’. In rendering this determination, courts should be wary not to exclude such testimony merely because, to some degree, it invades the jury’s province. As we have preciously noted, ‘[e] xpert opinion testimony is used in partial substitution for the jury’s otherwise exclusive province which is to draw “conclusions from the facts.”
It is a kind of authorized encroachment in that respect’ * * *
“Moreover, in recognition that expert testimony of this nature may involve novel scientific theories and techniques, a trial court may need to determine whether the proffered expert testimony is generally accepted by the relevant scientific community.” (Citations omitted.)
Whether the test for admissibility of this AASI evidence and the conclusions derived therefrom is defined by Frye or Daubert is not critical. The issue is whether such evidence would, in any event, be admissible since its primary underpinning is based on a polygraph.
*702 It is well established that the results of a polygraph examination and/or expert testimony based thereon are not admissible at a criminal trial (People v Leone, 25 NY2d 511 [1969]; People v Shedrick, 66 NY2d 1015 [1985], rearg denied 67 NY2d 758 [1986]; People v Angelo, 88 NY2d 217 [1996]; Prince, Richardson on Evidence § 7-323 [Farrell 11th ed]). Here, Dr. Abel has stated that one of the two most valid measures he used in reaching his conclusion was the polygraph. Were he permitted to testify as to his findings he would, in effect, be swearing to the scientific validity of an otherwise inadmissible polygraph test. Moreover, a polygrapher’s opinions regarding a testee’s veracity are not admissible as evidence (People v Scott, 88 NY2d 888 [1996]).
Here, if Dr. Abel was permitted to testify as proposed he would be vouching for the veracity of both the polygraph tester and the veracity of the testee defendant’s statement that he did not touch a child for self-gratification. “The general rule is that a party’s self-serving statement is inadmissible at trial when offered in his or her favor, and it may not be introduced either through the testimony of the party or through the testimony of a third person” (People v Oliphant, 201 AD2d 590, 590-591 [1994]). The reason for this rule is the danger in permitting a party to manufacture favorable, self-serving evidence. (People v Oliphant, supra; People v Weston, 249 AD2d 496 [1998]; Prince, Richardson on Evidence § 8-110 [Farrell 11th ed].)
Dr. Abel’s second “most valid” underpinning is his evaluation of his statistical/analytical model of defendant’s probability to commit a sex offense (including the polygraph inquiry) to a base probability model which he himself constructed (see, 25 Child Abuse and Neglect, The International Journal [No. 5] 703-718 [2001] [classification models of child molester utilizing the Abel assessment for sexual interest by G.G. Abel, A. Jordan, C.G. Hand, L.A. Holland, and A. Phipps]). Once again, Dr. Abel would be testifying and vouching for his own veracity as well as vouching for scientific acceptance of the base model he himself constructed. Such testimony is likewise self-serving and inadmissable.
Defendant additionally requests that if the court determines that the results of the AASI examination are inadmissible Dr. Abel be permitted to give expert testimony regarding his general psychological evaluation of defendant, without reference to the AASI.
Because of the way defendant’s interview and psychological evaluation was conducted, this testimony, even without refer *703 ence to the AASI, would have the polygraph as an underpinning. For the reasons previously stated, testimony by Dr. Abel is inadmissible.
Accordingly, defendant’s motion to admit the testimony of Dr. Abel at trial is, in all respects, denied.