**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

JOSEPH STOTERAU,
       *Defendant-Appellant.*

No. 07-50124

D.C. No.
CR-06-00190-AG

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
March 6, 2008—Pasadena, California

Filed April 29, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

4607

**COUNSEL**

Jonathan Libby, Deputy Federal Public Defender, Los Angeles, California (argued); Kathryn A. Young, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Anne C. Gannon, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

**OPINION**

IKUTA, Circuit Judge:

Joseph Stoterau pleaded guilty to transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1). In this appeal, he challenges several aspects of his sentence, including the length of his term of imprisonment and several special conditions of his supervised release. We affirm in part, vacate in part, and remand.

I

In December 2005, Joseph Stoterau, then 26, met John Doe at a gay and lesbian support group. Doe was 14 at the time.

In July 2006, Stoterau introduced Doe to the website "rentboy.com." Stoterau explained that the site was an opportunity for the two of them to make some money. Doe agreed to allow Stoterau to take nude pictures of him. Stoterau then uploaded the photos to rentboy.com and included his own cell phone number as Doe's contact information.

When rentboy.com customers would call, Stoterau would pretend to be Doe. Stoterau would tell customers that he (Doe) would engage in whatever type of sex they wanted for $250 per hour. Stoterau would then get in contact with Doe and provide him with the customers' details. On at least two occasions Stoterau drove Doe to locations where customers paid Doe $250 for various sex acts. After these meetings, Doe would give part of the $250 to Stoterau. Stoterau would give Doe alcoholic beverages before each meeting.

On August 4, 2006, officers from Immigration and Customs Enforcement executed a search warrant at Stoterau's residence. During the search, officers seized Stoterau's personal computer. A subsequent search of the hard drive revealed images depicting child pornography, that is, visual depictions

of a minor child engaged in sexually explicit conduct. On October 30, 2006, Joseph Stoterau pleaded guilty to a one-count information charging him with transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1).[1]

Following Stoterau's guilty plea, the probation office prepared a Presentence Investigation Report ("PSR"), which included the following calculation of Stoterau's indicated Guidelines range. First, the PSR noted that the applicable Guidelines provision for violations of 18 U.S.C. § 2252A(a)(1) is U.S.S.G. § 2G2.2 (base offense level 22). Second, the PSR applied the cross-reference to U.S.S.G. § 2G2.1 (sexually exploiting a minor by production of sexually explicit material) pursuant to U.S.S.G. § 2G2.2(c) because Stoterau's offense conduct involved posing and photographing Doe as he engaged in sexually explicit conduct under 18 U.S.C. § 2256 (sexually explicit conduct includes "lascivious exhibition of the genitals or pubic area of any person"). This cross-reference had the effect of increasing Stoterau's base offense level from 22 (per § 2G2.2) to 32 (per § 2G2.1). Third, the PSR applied a two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) for an offense involving "the commission of a sexual act or sexual contact." Fourth, the PSR applied a two-level enhancement under U.S.S.G. § 2G2.1(b)(3) because Stoterau's "offense involved distribution" of pornographic materials. Fifth, the PSR applied a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). These computations resulted in a total offense level of 33. Stoterau's base offense level was then combined with his criminal history category of II.[2] This resulted in an indicated Guidelines range of 151-188 months.

---

[1]18 U.S.C. § 2252A(a)(1) punishes "[a]ny person who . . . knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography."

[2]In 2002, Stoterau was convicted of grand theft, in violation of Cal. Penal Code § 487(a), receiving stolen property, in violation of Cal. Penal

As is customary, the PSR also provided a synopsis of Stoterau's offense conduct. Some of the information used in this synopsis was drawn from several law enforcement reports on Stoterau's case. In his sentencing brief, Stoterau objected to the use of this information, arguing that it was unreliable hearsay. Stoterau also argued for a "no more than 87 month sentence," challenged the two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A), and lodged objections against several of the proposed conditions of supervised release.

The district court held Stoterau's sentencing hearing on March 5, 2007. After hearing from the parties and consulting Stoterau's PSR, the district court adopted the Guidelines range calculated in the PSR (151-188 months) and sentenced Stoterau to a term of imprisonment of 151 months. The court considered and rejected Stoterau's argument that the two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) was inappropriate. Additionally, as part of its sentencing decision, the district court explicitly referenced the sentencing factors of 18 U.S.C. § 3553(a) and explained why it believed the sentence was consistent with those factors.

The district court also sentenced Stoterau to a five-year term of supervised release. As part of this term of supervised release, the district court imposed a number of special conditions. The district court did not rule on Stoterau's contention, raised in his sentencing brief, that the PSR contained unreliable hearsay. Stoterau timely appealed.

Stoterau's appeal raises the following five general issues, which we discuss in turn: (1) whether the district court erred

---

Code § 496(a), and second degree burglary from a commercial structure, in violation of Cal. Penal Code §§ 459, 460(b). In 2003, Stoterau admitted to being under the influence of a controlled substance, in violation of Cal. Health & Safety Code § 11550(a). Although this latter case was resolved through a diversionary disposition, it nevertheless counts for purposes of a defendant's criminal history score under U.S.S.G. § 4A1.2(f).

in imposing the two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A); (2) whether Stoterau's overall sentence was unreasonable; (3) whether the district court abused its discretion in imposing eight special conditions on Stoterau's five-year term of supervised release; (4) whether the district court erred in failing to rule on Stoterau's allegation that the PSR contained unreliable hearsay; and (5) whether this disposition should be filed under seal or alternatively, whether we should identify Stoterau by a pseudonym in place of his true name.

## II

Stoterau first argues that the district court erred in imposing a two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) for offenses involving "the commission of a sexual act or sexual contact."[3] "This court reviews the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005).

U.S.S.G. § 2G2.1(b) directs the district court to apply specified enhancements for six different "[s]pecific [o]ffense [c]haracteristics." The specific offense characteristic at issue

---

[3]The section provides, in pertinent part,

2G2.1. Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production.

. . . .

(b) Specific Offense Characteristics

. . . .

(2) . . . If the offense involved —

(A) the commission of a sexual act or sexual contact, increase by 2 levels[.]

here is identified in U.S.S.G. § 2G2.1(b)(2)(A), which states, "[i]f the offense involved — (A) the commission of a sexual act or sexual contact, increase by 2 levels." Stoterau contends that he pleaded guilty only to transporting child pornography, and that the sexual contacts between Doe and the rentboy.com customers were not part of the offense to which he pleaded guilty. Accordingly, Stoterau argues, it was inappropriate for the district court to use § 2G2.1(b)(2)(A) to enhance his sentence.

Stoterau's argument fails in light of the Guidelines' definition of "offense" and its directions regarding the determination of specific offense characteristics for offense conduct under Chapter 2 of the Guidelines (which includes § 2G2.1(b)(2)(A)). As defined in U.S.S.G. § 1B1.1, " '[o]ffense' means the offense of conviction *and all relevant conduct under § 1B1.3* (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1(H) (emphasis added). Because nothing in U.S.S.G. § 2G2.1(b)(2)(A) specifies that the definition of "offense" in that section has a different meaning than the definition provided in U.S.S.G. § 1B1.1, nor is a different meaning evident from the context, we conclude that "offense" for purposes of § 2G2.1(b)(2)(A) includes the relevant conduct listed in § 1B1.3. U.S.S.G. § 1B1.3, in turn, provides that specific offense characteristics under Chapter 2 of the Guidelines are to be determined on the basis of the relevant conduct set forth in § 1B1.3(a).

**[1]** As defined in § 1B1.3(a)(1), "relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). "Relevant conduct" also includes "all harm that resulted from the acts and omissions specified in subsection[ ] (a)(1) . . . and all

harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(3); *see United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000) (explaining that the phrase "resulted from" in § 1B1.3(a)(3) establishes a causation requirement which other circuits have held is satisfied when the harm was a "direct result" or "flowed naturally" from the defendant's criminal misconduct). Therefore, if a defendant's relevant conduct under § 1B1.3(a) (including all acts caused by the defendant during commission of the offense of conviction and all harm resulting from such acts) involved "the commission of a sexual act or sexual contact," then such sexual act or contact is part of the defendant's "offense" and must be considered when determining the specific offense characteristics under § 2G2.1(b)(2)(A).

**[2]** As noted above, U.S.S.G. § 1B1.1 defines "offense" as "the offense of conviction and all relevant conduct under § 1B1.3." Stoterau was convicted of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1). The factual basis for the transportation element of Stoterau's conviction was his uploading of Doe's photos on rentboy.com. Thus, uploading the photos was "relevant conduct" for purposes of U.S.S.G. § 1B1.3(a)(1)(A) because it was an act committed "during the commission of the offense of conviction." This conduct directly resulted in Doe undertaking sexual acts with rentboy.com customers. These sexual acts constituted a harm to Doe, an underage boy. Therefore, under U.S.S.G. § 1B1.3(a)(3), these sexual acts were part of Stoterau's relevant conduct because they were a "harm that resulted from the acts . . . specified in subsection[ ] (a)(1)." Because Doe's sexual acts were part of Stoterau's relevant conduct under § 1B1.3, they were part of his "offense" as defined in § 1B1.1, and must be used to determine the specific offense characteristics for purposes of U.S.S.G. § 2G2.1(b)(2)(A). Therefore, the district court appropriately took such sexual contacts into account by applying the two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A).

### III

Stoterau next challenges the overall reasonableness of his term of imprisonment. Appellate courts must employ a two-step process when reviewing a sentence for reasonableness. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007). "[We] must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* "Assuming that the district court's sentencing decision is procedurally sound," we "then consider the substantive reasonableness of the sentence imposed." *Id.* When conducting substantive reasonableness review, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* We review the reasonableness of the district court's sentencing decision for abuse of discretion. *Id.* That we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

Stoterau raises both procedural and substantive objections to his sentence. He first contends that the district court did not adequately consider the § 3553(a) factors. According to Stoterau, the district court merely engaged in a rote recitation of § 3553(a) and thereby violated the Supreme Court's admonishment that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007).

**[3]** While district courts are required to "state in open court the reasons for [their] imposition of the particular sentence," 18 U.S.C. § 3553(c), this obligation does "not necessarily require lengthy explanation." *Rita*, 127 S. Ct. at 2468. "Cir-

cumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical." *Id.* "Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. Mix*, 457 F.3d 906, 912 (9th Cir. 2006) (internal quotation marks omitted).

Likewise, "when a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *United States v. Carty*, ___ F.3d ___, 2008 WL 763770, at *5 (9th Cir. Mar. 24, 2008) (en banc). However, when a defendant's arguments are straightforward and uncomplicated, the district court does not abuse its discretion when it listens to the defendant's arguments and then "simply [finds those] circumstances insufficient to warrant a sentence lower than the Guidelines range." *Id.* at *7 (quoting *Rita*, 127 S. Ct. at 2469).

**[4]** In this case, the district court did reference and apply the sentencing factors of § 3553(a). It stated:

> I believe this sentence satisfies the factors to be considered under section 3553(a). The court considered the nature and circumstances of the offense and the history and characteristics of the defendant. The court believes the sentence reflects the seriousness of the offense, particularly as it relates to a minor whose life may very well be negatively affected by the conduct of the defendant. The court believes the sentence is necessary to promote respect for the law and to let the general public know the seriousness of this crime through the length of the sentence. The

court believes this provides a just punishment for the offense provided. The court believes that it affords adequate deterrence to this type of criminal conduct. The court believes this sentence protects the public from further crimes of this defendant.

This explanation includes references to several subsections of 18 U.S.C. § 3553(a). Specifically, it refers to subsections (a)(1), (a)(2)(A), (a)(2)(B), and (a)(2)(C).[4]

[5] Additionally, at various points in the sentencing hearing, the district court explicitly noted that it had considered Stoterau's arguments. The court also imposed a sentence within Stoterau's indicated Guidelines range. *See Carty*, 2008 WL 763770, at *7-8 (noting that, except in an unusual or complex case, a district court need not provide much explanation for a within-Guidelines sentence). In sum, the record makes clear that the district court considered the evidence and arguments of the defendant and based its sentence on an analysis of the advisory Guidelines range and the provisions of 18 U.S.C. § 3553(a). *See Rita*, 127 S. Ct. at 2469. Therefore, we conclude that the district court did not commit procedural

---

[4]18 U.S.C. § 3553(a) provides, in relevant part:

(a)  Factors to be considered in imposing a sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed —

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant[.]

error under *Gall* and we reject Stoterau's contentions that the district court failed to consult the § 3553(a) factors, explain its sentence in light of those factors, or respond to each of Stoterau's specific, nonfrivolous sentencing arguments. *See Gall*, 128 S. Ct. at 597; *Carty*, 2008 WL 763770, at *5.

Stoterau also claims that his term of imprisonment is substantively unreasonable. He advances three principal arguments in support of this claim.

First, Stoterau argues that his sentence is unreasonable because it overstates his criminal history. Stoterau's argument relies on one of the convictions used to calculate his criminal history score. In 2003, Stoterau admitted to being under the influence of a controlled substance, in violation of Cal. Health & Safety Code § 11550(a). Stoterau resolved this case by successfully entering and completing a diversionary disposition pursuant to Cal. Penal Code §§ 1000-1000.9 (permitting persons accused of specified crimes to enter into various rehabilitation programs in lieu of trial). Although Stoterau's successful completion of this diversionary program meant that his offense was "deemed to have never occurred" as a matter of state law, Cal. Penal Code § 1000.4(a), the United States Sentencing Guidelines nevertheless count diversionary dispositions as part of a defendant's criminal history score. U.S.S.G. § 4A1.2(f).

Stoterau asserts that it was unfair for the district court to count this conviction because he *could* have disposed of his prior conviction by seeking to have it expunged under Cal. Penal Code § 1203.4 (where a convicted defendant has met specified conditions, the court may release the defendant "from all penalties and disabilities resulting from the offense of which he or she has been convicted" with certain exceptions). Stoterau argues that had he successfully sought expungement, his 2003 offense would not have counted for purposes of his criminal history because "[s]entences for

expunged convictions are not counted" under the Guidelines. U.S.S.G. § 4A1.2(j).

[6] This argument misses the mark because convictions set aside pursuant to Cal. Penal Code § 1203.4 are not "expunged" for purposes of U.S.S.G. § 4A1.2(j). *United States v. Hayden*, 255 F.3d 768, 774 (9th Cir. 2001). Therefore, even if Stoterau had successfully sought to resolve his 2003 case under Cal. Penal Code § 1203.4, rather than § 1000.4(a), it would have nevertheless counted for purposes of his criminal history score. Accordingly, the district court was reasonable in counting the 2003 case as part of Stoterau's criminal history score.

Second, Stoterau contends that his sentence was unreasonable because his base offense level included duplicative enhancements. He argues that his base offense level was enhanced multiple times for the same underlying criminal act, namely, putting Doe's photo on the website. Stoterau misunderstands the nature of our double counting doctrine. "Impermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007). "However, [d]ouble counting is not always impermissible; it is sometimes authorized and intended by the Sentencing Guidelines when each invocation of the behavior serves a unique purpose under the Guidelines." *Id.* (internal quotation marks omitted) (alteration in original).

[7] Here, each of Stoterau's enhancements served a "unique purpose under the Guidelines," and accounted for a different aspect of the harms caused by Stoterau's criminal act. As explained in the PSR, the Guidelines directed three separate increases in Stoterau's base offense level for three different reasons: first, because Stoterau's offense conduct involved enticing a minor to engage in sexually explicit conduct for the

purpose of producing a visual depiction of such conduct, *see* U.S.S.G. § 2G2.2 cmt. n.5(A); second, because his offense included the sexual acts undertaken between Doe and the rentboy.com customers, *see* U.S.S.G. § 2G2.1(b)(2)(A); and finally, because he distributed Doe's photos over the Internet to the rentboy.com website, *see* U.S.S.G. § 2G2.1 cmt. n.1. Each of these enhancements accounted for a different aspect of Stoterau's offense and were separately authorized and intended by the Guidelines. Accordingly, Stoterau's sentence was not unreasonable by virtue of duplicative enhancements or impermissible double counting.

Finally, Stoterau contends that his circumstances are special; he points to the abuse he suffered as a child, his mental health issues, and his life-long struggle with methamphetamine addiction. Stoterau claims that these mitigating considerations render his overall sentence unreasonable. *See* 18 U.S.C. § 3553(a)(1). This argument too is unpersuasive. Stoterau sexually exploited a 14-year-old boy for profit. The district court reasonably concluded that Stoterau's 151-month sentence was necessary to reflect the seriousness of the offense, promote respect for the law, and to provide adequate deterrence for this type of criminal conduct. *See* 18 U.S.C. § 3553(a). Moreover, this sentence was at the low-end of Stoterau's Guidelines range. While we do not apply an appellate presumption of reasonableness to a within-Guidelines sentence, *Carty*, 2008 WL 763770, at *6, we recognize that " 'when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable.' " *Id.* (quoting *Rita*, 127 S. Ct. at 2465).

[8] To the extent that Stoterau raises extenuating circumstances relevant under 18 U.S.C. § 3553(a)(1), we do not consider those circumstances so special as to render Stoterau's overall sentence unreasonable. *See Carty*, 2008 WL 763770, at *8 (noting that the defendant's circumstances were insufficiently unusual to compel a lower sentence than the low-end

of the Guidelines range). Evaluating the record in light of the totality of the circumstances, we conclude that the district court did not abuse its discretion in sentencing Stoterau to a term of imprisonment of 151 months. *See Gall*, 128 S. Ct. at 597.

IV

Stoterau challenges eight of the special conditions of his five-year term of supervised release. We review the district court's decision to impose conditions of supervised release for abuse of discretion. *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006) In applying this standard of review, "we give considerable deference to a district court's determination of the appropriate supervised release conditions," recognizing that "a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude." *Id.* (internal quotation marks omitted).

The principal statutory provision that constrains the district court's discretion to impose conditions of supervised release is 18 U.S.C. § 3583(d).[5] Under this subsection, district courts

---

[5]In relevant part, 18 U.S.C. § 3583(d) authorizes district courts to impose any condition they deem appropriate, so long as the condition:

 (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

 (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

 (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)[.]

18 U.S.C. § 3583(d) incorporates by reference the following provisions of 18 U.S.C. § 3553(a):

 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

 (2) the need for the sentence imposed —

may impose conditions "if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir. 2003) (internal quotation marks omitted). The government must carry the burden of demonstrating that these statutory standards are met. *Weber*, 451 F.3d at 558.

A

**[9]** Condition 11 states that, "[t]he defendant shall not access via computer any material that relates to pornography of any kind." Stoterau argues that the word "pornography" is too vague to put him on notice of what material is prohibited. We have previously held in the supervised release context that the word "pornography," without more, is too vague to put the defendant on notice of "what conduct will result in his being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002). We explained:

> Reasonable minds can differ greatly about what is encompassed by 'pornography.' Given this inherent vagueness, Guagliardo cannot determine how broadly his condition will extend. Further, we cannot determine whether the condition is otherwise reasonable under 18 U.S.C. § 3583(d).

*Id.*

---

. . .

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

**[10]** Like the challenged condition in *Guagliardo*, Condition 11 here leaves Stoterau "in the untenable position of discovering the meaning of his supervised release condition only under continual threat of reimprisonment, in sequential hearings before the court." *Id.* (internal quotation marks omitted). Accordingly, following *Guagliardo*, we vacate this condition and remand for the district court to impose a condition with greater specificity.

B

Condition 12 states:

> The defendant shall participate in a psychological or psychiatric counseling program and/or a sex offender treatment program, which may include inpatient treatment, as approved and directed by the probation officer. The defendant shall abide by all rules, requirements, and conditions of such program, including submission to risk assessment, evaluations and psychological[6] testing, such as polygraph, and Abel testing.

Stoterau raises two principal objections to this condition.[7]

---

[6]In this case, there is a discrepancy between the court's pronouncement of Condition 12 at the sentencing hearing and in the written judgment. At the sentencing hearing, the district court used the word "psychological"; the judgment, however, uses the word "physiological." "When there is a discrepancy between an unambiguous oral pronouncement of a sentence and the written judgment, the oral pronouncement controls." *United States v. Fifield*, 432 F.3d 1056, 1059 n.3 (9th Cir. 2005). We therefore give legal effect to the word "psychological," as used by the district court in its oral pronouncement of sentence. In this case, however, the difference between "psychological" and "physiological" is immaterial to the question presented here on appeal, namely, whether the district court abused its discretion in imposing polygraph and Abel testing. Regardless of whether the word "psychological" or "physiological" is used, Condition 12 unambiguously specifies that Stoterau must submit to polygraph and Abel testing.

[7]Stoterau cursorily raises a number of other challenges to this condition. He asserts that the polygraph requirement violates his Sixth Amendment

First, he argues that mandatory polygraph testing violates his Fifth Amendment right not to be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Second, Stoterau claims that the requirement that he submit to Abel testing violates his due process rights and the requirements of 18 U.S.C. § 3583(d). We address these arguments in turn.

**[11]** First, the polygraph prong of Condition 12 does not infringe on Stoterau's Fifth Amendment rights because Stoterau will retain these rights during his polygraph exams. "[A] district court may require, as a term of supervised release, that a defendant submit to polygraph testing, provided such a condition comports with the requirements of § 3583(d), but a defendant retains his Fifth Amendment rights during any such testing." *Weber*, 451 F.3d at 568 n.17. *See also United States v. Antelope*, 395 F.3d 1128, 1134-41 (9th Cir. 2005); *United States v. Lee*, 315 F.3d 206, 212-13 (3d Cir. 2003) (upholding a condition requiring the defendant to submit to random polygraph examination, because "the condition does not require [the defendant] to answer incriminating questions. . . . Thus, if a question is asked during the polygraph examination which calls for an answer that would incriminate [the defendant] in a future criminal proceeding, [the defendant] retains the right to invoke his Fifth Amendment privilege and remain silent"). Therefore, if Stoterau receives a question during his polygraph exam which calls for him to provide an answer that would incriminate him in a future criminal proceeding, Stoterau retains the right to invoke his Fifth Amendment privi-

---

rights and that it is constitutionally overbroad and vague. He also contends that the district court violated the Constitution when it delegated to the probation officer the power to determine whether Stoterau is obliged to participate in outpatient or inpatient treatment. These contentions are general, mentioned only in passing, and are unsupported by meaningful argument. Accordingly, they are waived. *See* Fed. R. App. P. 28(a)(9); *Ghahremani v. Gonzales*, 498 F.3d 993, 997 (9th Cir. 2007); *United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997).

lege and remain silent. Should the government desire Stoterau to answer, it may afford his answers the protection of use and derivative use immunity. *See Antelope*, 395 F.3d at 1141 & n.5.

Stoterau argues that the polygraph prong of Condition 12 violates his constitutional rights for another reason, namely, that a polygraph examination is akin to custodial interrogation, and that therefore he would be entitled to *Miranda* warnings before the exam. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

**[12]** This argument fails because the polygraph examinations required by Condition 12 do not constitute custodial interrogation. In *Minnesota v. Murphy*, 465 U.S. 420, 430 & n.5 (1984), the Supreme Court determined that *Miranda* warnings are unnecessary in the context of probation interviews, where defendants are "not under arrest and [are] free to leave at the end of the meeting." Although "the probation officer could compel [the defendant's] attendance and truthful answers," such compulsion did not transform the probation interview "into an inherently coercive setting" akin to "formal arrest" or a "restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at 430-31 (internal quotation marks omitted). In short, the Court concluded, "the general obligation to appear and answer questions truthfully" does not constitute a custodial interrogation for purposes of *Miranda*. *Id.* at 427.

**[13]** The logic of *Murphy* applies with equal force in the present context. Condition 12 imposes polygraph testing as part of Stoterau's "psychological or psychiatric counseling program and/or . . . sex offender treatment program." Therefore, Stoterau will not be under arrest during these tests, and the temporary restrictions on his liberty are far less than if he were under arrest. To comply with Condition 12, Stoterau must only appear and answer questions truthfully. To the extent that the presence of the polygraph machinery increases

the coercive atmosphere of the interview, we conclude that the environment remains more akin to a probation interview than an interrogation in police custody. *See Lee*, 315 F.3d at 211-12. Therefore, Stoterau is not entitled to receive *Miranda* warnings before undergoing polygraph examination pursuant to Condition 12 of his supervised release.

Stoterau's second challenge to Condition 12 pertains to Abel testing. Abel testing is a diagnostic exam for sex offenders that studies "visual reaction time." *United States v. Birdsbill*, 243 F. Supp. 2d 1128, 1131 n.3 (D. Mont. 2003). In Abel testing:

> A test subject is asked to view slides of clothed persons of varying age and sex for the purpose of rating sexual attractiveness on a paper-and-pencil questionnaire. The subject is supposed to think that the paper-and-pencil test is the actual test, but the critical portion of the test calculates how long the subject gazes at the slide. It is this measure of [visual reaction time] that is used to determine the subject's sexual interest in the various categories of adults and children shown in the slides.

*Id.* Stoterau raises two principal objections to the Abel testing requirement in Condition 12. First, he argues that the district court's failure to articulate on the record at sentencing its reasons for imposing the Abel testing condition violated his due process rights. Second, Stoterau argues that the imposition of Abel testing violates 18 U.S.C. § 3583(d)(1) because the testing is too unreliable to be "reasonably related" to the goals of supervised release.

In considering Stoterau's due process claim, we begin with the general rule that district courts are not required to "articulate on the record at sentencing the reasons for imposing each condition." *Rearden,* 349 F.3d at 619; *see also United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007). We have carved

out an exception to this general rule for conditions of supervised release that implicate a particularly significant liberty interest. *Weber*, 451 F.3d at 560-61. Where such a particularly significant liberty interest is at stake, the district court must follow additional procedures and make special findings. *Id.* at 561; *United States v. Williams*, 356 F.3d 1045, 1053 (9th Cir. 2004). Specifically, the district court "must support its decision [to impose the condition] on the record with record evidence that the condition of supervised release sought to be imposed is necessary to accomplish one or more of the factors listed in § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *Weber*, 451 F.3d at 561 (internal quotation marks omitted).

We have identified three conditions of supervised release that implicate particularly significant liberty interests. In *Williams*, 356 F.3d at 1055, we determined that a condition of supervised release "compelling a person to take antipsychotic medication is an especially grave infringement of liberty" and thus warranted a departure from the usual rule that district courts need not articulate their reasons for imposing supervised release conditions. In *Weber*, we applied this heightened procedural requirement to a condition of supervised release which mandated penile plethysmograph testing.[8] 451 F.3d at 563. Finally, in *United States v. Cope*, 506 F.3d 908, 919 n.5 (9th Cir. 2007), we suggested in passing that "[w]e have no doubt that chemical castration would, if prescribed against the will of a defendant on supervised release, implicate a particularly significant liberty interest."

The relevant liberty interest impinged upon by these testing procedures and medicines is the "constitutional interest inher-

---

[8]Penile plethysmography is a testing procedure that "involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." *Weber*, 451 F.3d at 554 (internal quotation marks omitted).

ent in avoiding unwanted bodily intrusions or manipulations." *Weber*, 451 F.3d at 563 (internal quotation marks omitted); *see also Williams*, 356 F.3d at 1054 (noting that the potential for serious negative side effects is also germane to the analysis of whether a condition implicates a particularly significant liberty interest).

Abel testing does not involve any manipulations or intrusions akin to those involved in penile plethysmography, antipsychotic medication, or chemical castration.[9] As noted above, Abel testing involves showing subjects a series of slides and monitoring the amount of time they attend to each slide. *Weber*, 451 F.3d at 567. Unlike antipsychotics or chemical castration, Abel testing does not "interfere[ ] with mental processes [or] alter[ ] behavior." *Cope*, 506 F.3d at 919 n.5. Unlike penile plethysmography, Abel testing does not require the test subject to disrobe and does not "involve the minute monitoring of changes in the size and shape of a person's genitalia." *Weber*, 451 F.3d at 563. Indeed, in *Weber*, we noted that Abel testing is "much less intrusive into the body and somewhat less intrusive into the mind of a defendant than plethysmograph testing." 451 F.3d at 567. And in *Cope*, we described Abel testing as a "far less intrusive procedure" than penile plethysmography. 506 F.3d at 913 n.1.

**[14]** Like polygraph testing, Abel testing uses physiological data to draw rough inferences about the contents of a subject's thoughts. To the extent this is an intrusion into the mind, *see*

---

[9]Although we have had occasion to discuss Abel testing before, we have not yet determined whether it implicates a particularly significant liberty interest. In *Weber*, we discussed Abel testing "to point out the existence of a less intrusive alternative to plethysmograph testing." 451 F.3d at 568. However, "we [did] not set forth any opinion as to [Abel testing's] propriety in this, or any other case." *Id.* In *Cope*, we upheld a sex offender treatment condition that included Abel testing against the charge that the condition was overbroad. 506 F.3d at 920. Like *Weber*, *Cope* did not decide whether Abel testing implicates a particularly significant liberty interest.

*Weber*, 451 F.3d at 567, it is not the type of intrusion which "tinker[s] with the mental processes," *Williams*, 356 F.3d at 1054 (internal quotation marks omitted). It is different in kind from the intrusions associated with penile plethysmography, chemical castration, and antipsychotic medication. Accordingly, we conclude that Abel testing does not implicate a particularly significant liberty interest, and thus does not require the district court to make the heightened findings required by *Williams* and *Weber*.

Stoterau also argues that Abel testing is too unreliable to be reasonably related to the goals of supervised release under 18 U.S.C. § 3583(d). Stoterau principally relies on *United States v. Birdsbill*, 243 F. Supp. 2d 1128. In that case, the district court considered whether Abel testing was sufficiently reliable to be admissible under the evidentiary standard for scientific testimony articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Birdsbill*, 243 F. Supp. 2d at 1132-36. Expressing concern that Abel testing could be subject to faking, *id.* at 1135-36, the court stated that the "known or potential error rate of [Abel testing] varies from poor . . . to appalling." *Id.* at 1135. The court also explained that the reliability of Abel testing was difficult to evaluate because "there have been no independent studies conducted for the purpose of verifying the theory underlying [Abel testing]." *Id.* Indeed, the court noted that "there is a fundamental problem in any attempt to replicate or verify the validity of [Abel testing] because the formula used . . . is proprietary information." *Id.* at 1133. The creator of Abel testing "testified that he does not share his formula with anyone outside his company." *Id.* Ultimately, the district court concluded that Abel testing was insufficiently reliable to satisfy the *Daubert* standard. *Id.* at 1136.

**[15]** Even if we were to agree with *Birdsbill*'s conclusion that Abel testing is too unreliable to be admissible as evidence under the *Daubert* standard, such a conclusion would not answer the question in this case: whether such testing can be

used as a potential treatment tool for supervised release. *Cf. United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003) (the polygraph test is generally inadmissible at trial, but it may be used as a treatment tool upon an offender's release from prison); *see also United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) ("[P]olygraph results are inadmissible as evidence. But that does not much bear on the therapeutic value of the tool . . . ."). Under *Daubert*, a court must determine that proposed scientific testimony is both reliable and relevant. 509 U.S. at 597. However, a condition of supervised release need only be "reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and involve no greater deprivation of liberty than is reasonably necessary." *Rearden*, 349 F.3d at 618 (internal quotation marks omitted). The district court could reasonably conclude that the Abel test has value in rehabilitation and protection of the public as part of a treatment program for assessing a sex offender's interest in children. *See Weber*, 451 F.3d at 567 (noting that "[o]ne researcher . . . has deemed Abel testing to be a 'promising development' "); *see also Birdsbill*, 243 F. Supp. 2d at 1135 (noting another study concluding that the " 'Abel Assessment has promise and deserves to be tried in the field' ") (quoting Richard B. Krueger, John M. W. Bradford, and Graham D. Glancy, *The Abel Assessment for Sexual Interest - A Brief Description*, 26 J. Am. Acad. Psychiatry Law 279 (1998)). Accordingly, we conclude that the district court did not abuse its discretion in imposing Abel testing as part of Condition 12.

## C

**[16]** Condition 13 states:

> As directed by the Probation Officer, the defendant shall pay all or part of the costs of treating the defendant's psychological or psychiatric disorder and/or sex offender treatment to the aftercare contractor during the period of community supervision, pursu-

ant to 18 U.S.C. § 3672. The defendant shall provide payment and proof of payment as directed by the Probation Officer.

Stoterau argues that this condition violates § 3672, which in his view entrusts the district court with a non-delegable power to make the defendant pay for the costs of his treatment as part of his supervised release.[10] Therefore, Stoterau reasons, the district court abused its discretion in delegating that power to the probation officer. Stoterau did not object to the imposition of this condition before the district court, and we therefore review it for plain error. *See United States v. Ortiz*, 362 F.3d 1274, 1278 (9th Cir. 2004). We have previously held that district courts do not abuse their discretion when they impose conditions of supervised release that delegate to the probation officer the power to direct the defendant to pay some or all of the costs of treatment. *See United States v. Soltero*, 510 F.3d 858, 864 (9th Cir. 2007); *see also United States v. Dupas*, 419 F.3d 916, 924 (9th Cir. 2005) (rejecting the same challenge on plain error review). Following *Soltero* and *Dupas*, we conclude that the district court did not plainly err in imposing this condition as part of Stoterau's term of supervised release.

### D

Condition 15 states: "The defendant shall not own, use, or have access to the services of any commercial mail-receiving agency. Nor shall he open or maintain a post office box without the prior written approval of the Probation Officer." Stoterau argues that this condition is not reasonably related to the goals of supervised release specified in 18 U.S.C. § 3583(d).

---

[10]18 U.S.C. § 3672 details the "Duties of Director of Administrative Office of the United States Courts." In relevant part, it provides:

> Whenever the court finds that funds are available for payment by or on behalf of a person furnished [rehabilitative] services, training, or guidance, the court may direct that such funds be paid to the Director."

In particular, he argues that nothing in the record ties his crime to the use of the mail.

**[17]** Supervised release conditions need not relate to the offense for which the defendant was convicted as long as they satisfy the requirements of 18 U.S.C. § 3583(d). *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003). Condition 15 meets the criteria set forth in 18 U.S.C. § 3583(d) for permissible conditions of supervised release. First, it is reasonably related to the goal of specific deterrence. 18 U.S.C. § 3583(d)(1). The mail and the Internet are both channels for the transmission of child pornography. *See, e.g., United States v. Fellows*, 157 F.3d 1197, 1199 (9th Cir. 1998) (defendant received child pornography through the mail and through the Internet). Commercial mail services allow customers to receive mail at non-residential locations. So do post office boxes. It is reasonable to infer that people may choose to receive mail at non-residential locations when they are attempting to conceal their identity. Second, this condition does not impose a "greater deprivation of liberty than is reasonably necessary" as required by § 3583(d)(2), because Stoterau will still have unencumbered access to the mail through his residential address and has the option of utilizing a P.O. box with prior approval from his probation officer. Accordingly, the district court did not abuse its discretion in imposing this condition.

E

Condition 17 states:

> The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18, except: a) in the presence of the parent or legal guardian of said minor; and b) on the condition that the defendant notify said parent or legal guardian of his conviction in the instant offense.

Stoterau argues that the notification prong of this condition is unnecessary, given the required presence of the parent during any and all allowed communications.

**[18]** We have previously upheld a condition which ordered a sex offender to "not have contact with children under the age of 18 unless approved by [his] probation officer." *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original). Like the condition in *Bee*, Condition 17 comports with the requirements of 18 U.S.C. § 3583(d) because it promotes Stoterau's rehabilitation, deters him from committing future crimes, and protects the public. Moreover, contrary to Stoterau's assertion, the notification prong of Condition 17 is reasonably related to the goals of supervised release. Parents may watch their children more closely depending on the company they keep. The notification prong of Condition 17 enables parents to exercise the appropriate level of vigilance in monitoring interactions between their children and Stoterau. Because the notification requirement alerts parents to a possible threat, it is reasonably related to the goals of rehabilitation, deterrence, and protection of the public pursuant to 18 U.S.C. § 3583(d).

F

Condition 18 states that "[t]he defendant shall not affiliate with, own, control, volunteer or be employed in any capacity by any business or organization that causes him to regularly contact persons under the age of 18." Condition 19 provides that "[t]he defendant shall not affiliate with, own, control, or be employed in any capacity by any business whose principal product is the production or selling of materials depicting or describing 'sexually explicit conduct' as defined at 18 U.S.C. § 2256(2)."[11] Stoterau objects to the effect these conditions will have on his choice of future occupations.

---

[11]The general definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2) is:

**[19]** Like other special conditions, occupational restrictions must comport with the requirements of 18 U.S.C. § 3583(d). In addition, the Guidelines provide for heightened scrutiny of occupational restrictions which impinge upon a defendant's "specified occupation, business, or profession." U.S.S.G. § 5F1.5.

We have previously indicated that a "specified occupation" as used in § 5F1.5 refers to the defendant's profession or occupation prior to the instant conviction. *See Rearden*, 349 F.3d at 622 (explaining that § 5F1.5 was not triggered because the restriction did not prohibit the defendant from working "in his previous profession as an art director or set decorator"); *see also United States v. Paul*, 274 F.3d 155, 171 n. 18 (5th Cir. 2001) (holding that if the defendant's "primary means of supporting himself" were involved, then he would be entitled to the higher level of scrutiny for occupational restrictions under § 5F1.5).

**[20]** Moreover, the plain text of § 5F1.5 supports the interpretation that the provision applies only to restrictions on the specific occupation or occupations held by the defendant prior to conviction. In order to impose a restriction pursuant to § 5F1.5, the court must determine that a "reasonably direct relationship existed between the defendant's occupation . . . and the conduct relevant to the offense of conviction."

---

actual or simulated —

    (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (ii) bestiality;

    (iii) masturbation;

    (iv) sadistic or masochistic abuse; or

    (v) lascivious exhibition of the genitals or pubic area of any person[.]

U.S.S.G. § 5F1.5(a)(1). The reference to "the defendant's occupation" indicates that a district court must consider the specific occupation or occupations held by the defendant subject to the sentencing proceeding, rather than speculate about the range of options for employment that might be available to the defendant in the future. We therefore conclude that § 5F1.5 applies only to the "specified occupation, business, or profession" held by the defendant prior to conviction.

[21] U.S.S.G. § 5F1.5 is not applicable here. The PSR described Stoterau's numerous unspecified brief periods of employment in the customer service field beginning in 1997 and continuing until 2001. The PSR also reported Stoterau's work as a singer and indicated that he previously toured with the group "Up With People" from 1998 to 1999. Because Stoterau was not in the business of producing depictions or descriptions of sexually explicit conduct, the condition prohibiting him from working in this area does not qualify as an occupational restriction under § 5F1.5. *See Rearden*, 349 F.3d at 622. Likewise, the record does not indicate that Stoterau ever pursued an occupation which brought him into regular contact with minors. Accordingly, the condition prohibiting Stoterau from working in such an environment does not amount to an occupational restriction under § 5F1.5. *See id.* Because § 5F1.5 is not applicable, the district court was not obliged to make the findings required by that section.

[22] We next consider Stoterau's claims that Condition 18 violates 18 U.S.C. § 3583(d) and is overbroad. Like Condition 17, Condition 18 limits Stoterau's interactions with minors in order to forestall the possibility that he will offend again. Given the predatory nature of Stoterau's offense conduct, such limitations are reasonably related to the goals of deterrence, rehabilitation, and protection of the public. 18 U.S.C. § 3583(d)(1). Nor does Condition 18 impose a "greater deprivation of liberty than is reasonably necessary" to further these goals. 18 U.S.C. § 3583(d)(2). Stoterau is not precluded from resuming his work as a singer or a customer service represen-

tative, so long as he does not do so in environments which regularly include minors. For much the same reasons, we conclude that Condition 18 is not overbroad. "[E]ven very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public." *Bee*, 162 F.3d at 1236. Condition 18 meets these goals. Moreover, we upheld a condition of similar breadth in *Bee*. *Id.* at 1235 (directing a defendant, who had sexually abused a minor, not to "have contact with children under the age of 18 unless approved by [his] probation officer") (internal quotation marks omitted) (alteration in original). Accordingly, we conclude that Condition 18 is consistent with § 3583(d) and not overbroad.

A similar analysis leads to the conclusion that Condition 19 is consistent with § 3583(d) and reasonable in breadth. We have previously held that a defendant's access to sexually explicit materials may be restricted in order to reasonably further the goals of supervised release. In *Bee*, we affirmed the district court's imposition of a condition prohibiting the possession of sexually explicit material in a case where the defendant was convicted of sexual abuse of a minor. *Id.* In *Rearden*, a case concerning a defendant convicted of shipping child pornography, we concluded that the district court "did not plainly err in limiting [the defendant's] possession of materials depicting sexually explicit conduct because the condition furthered the goals of rehabilitating him and protecting the public." 349 F.3d at 620. Condition 19 is similarly consistent with the requirements of 18 U.S.C. § 3583(d). By limiting Stoterau's exposure to materials depicting sexually explicit conduct, this condition decreases the likelihood that Stoterau will commit a similar sex offense in the future.

Stoterau also contends that Condition 19 is overbroad because it would prevent him from working for businesses that produce legal adult pornography as well as non-pornographic materials which include depictions or descriptions of simulated sexual acts or nudity. We reject this over-

breadth argument, given our conclusion that Condition 19 meets the goals of § 3583. *See Bee*, 162 F.3d at 1236. Moreover, our precedent forecloses Stoterau's argument that the phrase "sexually explicit conduct" is vague and overbroad. In *Rearden*, 349 F.3d at 620, we concluded that the district court did not plainly err in imposing a special condition that the defendant not possess any materials depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2), notwithstanding the defendant's contentions that the condition was vague and overbroad. And in *Antelope*, 395 F.3d at 1142, we noted that the condition imposed in *Rearden* "passed constitutional muster."

**[23]** In sum, we conclude the district court did not abuse its discretion in imposing Condition 18 and Condition 19. They do not trigger the heightened findings required by U.S.S.G. § 5F1.5, they comport with the requirements of 18 U.S.C. § 3583(d), and they are not overbroad.

## G

Stoterau challenges the district court's authorization of the Probation Officer "to disclose the Presentence Report and/or any previous mental health evaluations or reports to the treatment provider." The court further allowed that "[t]he treatment provider may provide information, excluding the Presentence Report, to State or local social service agencies, such as the California Department of Social Services, for the purpose of the defendant's rehabilitation."

**[24]** Stoterau contends that this authorization violates the psychotherapist-patient privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence"). Stoterau's claim is foreclosed by *United States v. Lopez*, 258 F.3d 1053, 1057 (9th Cir. 2001), where

we explained that the psychotherapist-patient evidentiary privilege is "beside the point of a supervised release condition." The district court could reasonably conclude that the limited disclosure of Stoterau's PSR and mental health evaluations was necessary to facilitate his treatment and successfully monitor his reintegration into society following his release from prison. *See id.* Accordingly, the district court did not abuse its discretion in authorizing the limited disclosure of Stoterau's PSR and mental health records.

V

Stoterau next argues that the district court violated Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure by failing to rule on Stoterau's objection that several paragraphs of his PSR included facts based on unreliable hearsay. "This court reviews de novo the district court's compliance with Rule 32." *United States v. Herrera-Rojas*, 243 F.3d 1139, 1142 (9th Cir. 2001). "If the district court fails to make the required Rule 32 findings or determinations at the time of sentencing, the sentence must be vacated and the defendant resentenced." *Id.* (internal quotation marks omitted).

Rule 32(i)(3)(B) provides that at sentencing a court "must — for any disputed portion of the presentence report or other controverted matter — rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Only specific factual objections trigger Rule 32(i)(3)(B). *See United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007) (holding that Rule 32(i)(3)(B) "is limited to factual disputes which affect the temporal term of the sentence the district court imposes"); *United States v. Lindholm*, 24 F.3d 1078, 1085 n.7 (9th Cir. 1994) (holding that Rule 32(c)(3)(D), Rule 32(i)(3)(B)'s predecessor, "only

applies to factual inaccuracies, not to recommendations, opinions or conclusions not factual in nature").[12]

[25] In his sentencing position memorandum, Stoterau challenged several paragraphs of his PSR on the ground that the information gathered from police reports contained multiple levels of unreliable hearsay. Stoterau did not deny that the police reports contained the information alleged in the PSR or that the information was factually inaccurate. Instead, he argued that law enforcement reports are not generally a reliable source of accurate information. This challenge is not a specific factual dispute about issues affecting the temporal term of sentence but rather a general evidentiary legal challenge to the inclusion of information in the PSR drawn from sources other than the plea agreement. Accordingly, the district court did not violate Rule 32(i)(3)(B) by not ruling on Stoterau's objection.

VI

Stoterau filed a motion requesting that this disposition be filed under seal, or, in the alternative, that a pseudonym be used in place of his name. Stoterau argues that the dissemination of information regarding the nature of his offense could endanger his personal safety in prison.

[26] "While we deliberate in private, we recognize the fundamental importance of issuing public decisions after public arguments based on public records." *Doe v. United States (Doe I)*, 253 F.3d 256, 262 (6th Cir. 2001) (internal quotation marks omitted). Accordingly, "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compel-

---

[12]Rule 32(i)(3)(B) is a narrower version of its predecessor, Rule 32(c)(3)(D). "The Advisory Committee amended the Rule in part to make clear that the rule applies only to factual disputes which affect the temporal term of sentence." *Saeteurn*, 504 F.3d at 1179 n.10.

ling justification." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). Beyond his stated interest in concealing his identity, Stoterau does not provide a justification for his request that this entire disposition be filed under seal. We therefore deny Stoterau's motion to file this disposition under seal. Decisions of this court are a matter of public record, and the circumstances of Stoterau's case are not sufficiently exceptional so as to warrant a departure from this general rule. *See United States v. Mentzos*, 462 F.3d 830, 843 n.4 (8th Cir. 2006).

Stoterau's request for a pseudonym presents a closer question. As a general rule, "the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity." *United States v. Doe (Doe II)*, 488 F.3d 1154, 1156 n.1 (9th Cir. 2007); *see also United States v. Doe (Doe III)*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (granting a request for use of a pseudonym in an "unusual case" where criminal defendant was a government informant who, the parties agreed, would have "faced a risk of serious bodily harm if his role on behalf of the government were disclosed to other inmates"). In the unusual case, we consider whether pseudonymity is "necessary to protect a person from injury or harassment." *Doe II*, 488 F.3d at 1156 n.1. We must then "balance the need for anonymity against the general presumption that parties' identities are public information." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (applying this balancing test to the specific context of a civil employment retaliation claim).

Stoterau argues that he presents an unusual case in which there is a need for anonymity because sex offenders such as Stoterau face an elevated risk of violent abuse in prison. However, because this concern is equally present for all similarly situated sex offenders who face prison sentences, we cannot say that Stoterau's case is unusual. Indeed, in the sentencing context, courts have rejected the argument that "mere mem-

bership in a class of offenders that may be targeted by other inmates" is sufficient to make a defendant's case extraordinary. *United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir. 1997) (reversing a downward departure for susceptibility to abuse in prison that was based on the defendant's status as a child pornographer); *see also United States v. Parish*, 308 F.3d 1025, 1032 (9th Cir. 2002) (upholding a departure where the district court did not rely solely on the defendant's "mere membership in a class of offenders") (internal quotation marks omitted). Inmates may face a heightened risk of abuse in prison for a range of reasons (for example, membership in a gang, membership in an ethnic group, or sexual orientation),[13] and it is prison officials who have the primary responsibility to "take reasonable measures to guarantee the safety of the inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks omitted). If the nature of Stoterau's offense alone could qualify him for the use of a pseudonym, there would be no principled basis for denying pseudonymity to any defendant convicted of a similar sex offense. Such a significant broadening of the circumstances in which we have permitted pseudonymity is contrary to our long-established policy of upholding "the public's common law right of access to judicial proceedings," *Does I thru XXIII*, 214 F.3d at 1067, and contrary to our requirement that pseudonymity be limited to the "unusual case." *Doe II*, 488 F.3d at 1156 n.1.

Moreover, Stoterau has not shown that his need for anonymity outweighs "the public's interest in knowing the party's identity." *Does I thru XXIII*, 214 F.3d at 1068. We question the value that pseudonymity would have for Stoterau at this point. Stoterau's conviction is a matter of public

---

[13]*See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (discussing the problem of racially-based gang violence in prisons); *Farmer v. Brennan*, 511 U.S. 825, 829-30 (1994) (considering the case where a transsexual prisoner was sexually and physically abused in prison).

record, and many of the documents in his case were not submitted under seal. Therefore, the use of a pseudonym in this disposition will have limited effect in concealing the fact that Stoterau was convicted of transporting child pornography. On the other hand, "[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under these circumstances, the interest "weighing in favor of open judicial proceedings" outweighs the low value of pseudonymity at this point in Stoterau's proceedings. *Does I thru XXIII*, 214 F.3d at 1069.

**[27]** In sum, our precedents dictate that we grant criminal defendants a pseudonym only in the "unusual case, where there is a need for the cloak of anonymity." *Doe II*, 488 F.3d at 1156 n.1 (internal quotation marks omitted). Stoterau has not succeeded in showing that his case qualifies under this standard. The concern animating Stoterau's request for anonymity is equally present for all similarly situated sex offenders, and the value of anonymity to Stoterau at this point in the proceedings is outweighed by the public interest "weighing in favor of open judicial proceedings." *Does I thru XXIII*, 214 F.3d at 1069. We therefore deny Stoterau's motion to use a pseudonym in place of his name.[14]

## VII

In conclusion, we hold that the district court did not err in applying a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A). We hold the district court did not abuse its discretion in sentencing Stoterau to a 151-month term of

---

[14]We have used the name "John Doe" throughout this opinion as a pseudonym to protect the identity of the then 14-year-old victim. *See United States v. Cunningham*, 405 F.3d 497, 499 n.1 (7th Cir. 2005). Doe is not a party to this case and we use a pseudonym in deference to his privacy interests.

imprisonment. With one exception, we hold that the district court did not abuse its discretion in imposing certain special conditions on Stoterau's term of supervised release. We hold that the district court was not obliged by Rule 32 of the Federal Rules of Criminal Procedure to rule on Stotearu's evidentiary challenge to the information contained in his PSR. We deny Stoterau's motion to file this disposition under seal, and we decline to use a pseudonym in place of his name.

Because the use of the word "pornography" in Condition 11 made that condition impermissibly vague, we vacate the condition and remand for the district court to impose a condition with greater specificity.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**